The OKLAHOMA STATE BOARD OF EQUALIZATION, Petitioner,

v.

Milton C. CRAIG, District Judge of Lincoln County, Respondent.

No. 62327.

Supreme Court of Oklahoma.

Jan. 26, 1988.

Michael C. Turpen, Atty. Gen., John D. Rothman, Asst. Atty. Gen., Oklahoma City, for petitioner.

Bill Roberson, Dist. Atty., David Welch, Asst. Dist. Atty., Chandler, for respondent real parties in interest.

J. Lawrence Blankenship, Gen. Counsel, Donna E. Cox and Melanie Parks Kierig, Oklahoma City, for amicus curiae Oklahoma Tax Comn.

Mock, Schwabe, Waldo, Elder, Reeves & Bryant by James R. Waldo and Mary S. Thompson, Oklahoma City, for amicus curiae Arco Pipeline Co.

LAVENDER, Justice:

Respondents, real parties in interest, the Board of County Commissioners of Lincoln County and the County Assessor of Lincoln County, brought an action in the District Court of Lincoln County in which they attempted to challenge the propriety of an order fixing the valuation and assessment of property belonging to Arco Pipeline Company situated in Lincoln County. The action alleged that the order, entered by petitioner Oklahoma State Board of Equalization, had undervalued the property of Arco, resulting in an improperly low assessment. Petitioner challenged the authority of the district court to hear the action on grounds of improper venue. Arco objected to jurisdiction on the ground that an appeal to the Supreme Court is the sole method for challenging an assessment entered by the State Board of Equalization. Both challenges were overruled by respondent trial court, which found that jurisdiction and venue were proper under the provisions of the Oklahoma Administrative Procedures Act, 75 O.S.1981 § 318. Petitioner has now brought the present original

proceeding before this Court alleging that respondent trial court's attempted assertion of jurisdiction in this matter is unauthorized and requesting that jurisdiction be assumed by this Court and writ issued to prohibit further proceedings by respondent trial court.

Petitioner is constitutionally required to annually assess the property of all railroads and public service corporations for ad valorem tax purposes.[1] Petitioner performs this function with the aid of the Oklahoma Tax Commission.[2] Arco Pipeline Company is a public service corporation. The valuations assessed for the public service corporations are certified by the State Auditor and Inspector to the various county assessors. The assessed valuation is then entered on the county assessment roll and the property becomes subject to ad valorem taxation in the same manner as other property in the county.[3]

The provision of the Oklahoma Administrative Procedures Act under which respondent trial court found authority to hear the action brought by the Lincoln County authorities, provides:[4]

Any person or party aggrieved or adversely affected by a final order in an individual proceeding, whether such order is affirmative or negative in form, is entitled to certain, speedy, adequate and complete judicial review thereof under this act, but nothing in this section shall prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review.

Respondent trial court found Lincoln County to be an aggrieved person[5] under this provision, and thus found that the county authorities had standing to challenge the order of petitioner in Lincoln County District Court.[6]

■ The ruling of the trial court here runs squarely afoul of the express pronouncement of the Oklahoma Legislature at 68 O.S.1981 § 2468(a), which provides:

The proceedings before the boards of equalization *and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected* or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made. (emphasis added)

In the present matter the action brought by the county clearly sought a ruling in the district court as to the correctness of the assessment of the property of Arco which had been rendered by the State Board. Title 68 O.S.1981 § 2465 plainly provides that an appeal from a ruling of the State Board on such a matter shall be made to the Supreme Court.

Here 75 O.S.1981 § 318 is a general statute providing for review of final orders rendered by administrative agencies subject to the Oklahoma Administrative Procedures Act. Title 68 O.S.1981 § 2468(a), on the other hand, provides a specific avenue which *must* be used to obtain a review of the propriety of assessments or equalizations rendered by petitioner State Board. It is a well-settled principle of statutory construction that where a special statute specifically applies to a matter in controversy, and which dictates different rules and procedures to be followed from those set forth by a general statute, the special statute governs.[7]

1. Okla. Const. Art. 10, § 21.

2. 68 O.S.1981 §§ 2454 and 2455.

3. 68 O.S.1981 § 2456.

4. 75 O.S.1981 § 318(1).

5. 75 O.S.1981 § 301(9) includes political subdivisions within the definition of persons under the OAPA. Here the order reducing the valuation of property of Arco in Lincoln County had

the adverse affect of reducing the amount of taxes available to the County.

6. The hearing of a protest by petitioner such as Arco's protest of valuation leading to the reduced assessment is an individual proceeding. *Tulsa Classroom Teachers Asso. v. State Board,* 601 P.2d 99 (Okla.1979).

7. *Independent School Dist. No. 1 v. Board of County Commissioners,* 674 P.2d 547 (Okla. 1983); *Southwestern Bell Tel. Co. v. Oklahoma*

In the present case the specific statutes, 68 O.S.1981 §§ 2465 and 2468(a), require that a challenge to the propriety of the assessment of Arco's property in this matter be brought as an appeal to this Court. The attempt to place this question before respondent trial court runs in direct opposition to this requirement. We therefore find that the trial court's attempted exercise of jurisdiction over this controversy was unauthorized by law. Prohibition is a proper remedy to be applied to prevent the unauthorized exercise of judicial authority.[8]

Original jurisdiction ASSUMED. Writ of prohibition ISSUED.[9]

DOOLIN, C.J., HARGRAVE, V.C.J., HODGES and SIMMS, JJ., and BAILEY, S.J., concur.

OPALA and SUMMERS, JJ., dissent.

*County Excise Bd.,* 618 P.2d 915 (Okla.1980). Additionally, we note that 68 O.S.1981 § 2468(a), in its substantive form, was enacted subsequent to the adoption of the substantive form of 75 O.S.1981 § 318. 1965 Okla.Sess. Laws, ch. 501 § 2; 1963 Okla.Sess.Laws, ch. 371 § 18, and see *State ex rel. Murphy v. Boudreau,* 653 P.2d 531 (Okla.1982).

8. *Board of County Commissioners v. City of Norman,* 472 P.2d 910 (Okla.1970); *Reubin v. Thompson,* 406 P.2d 263 (Okla.1965).

9. The argument of respondent county officials as to the availability of an appeal under the province of the Oklahoma Administrative Procedures Act is based on the assertion that the county is afforded no standing to appeal the lowering of the assessment of a public service corporation under the provisions of the ad valorem tax code. The county officials did attempt to bring a challenge in accord with the tax code provisions but were dismissed on a finding that the county did lack standing. No attempt was made to appeal from this ruling of the State Board. We do not now attempt to rule on the question of whether or not the county may have had standing to challenge the State Board's ruling in relation to Arco's assessment. Such a ruling would be advisory in nature. Our present ruling is limited to the finding that the route which the county attempted to pursue is unauthorized by law.

1. The then-effective terms of 68 O.S.1981 § 2465 provided in pertinent part:
   "*Any district attorney or aggrieved taxpayer* who shall ... file a written complaint before

KAUGER, J., disqualifies.

BAILEY, S.J., appointed in place of KAUGER, J., who disqualifies.

OPALA, Justice, with whom SUMMERS, Justice, joins, dissenting.

In this original proceeding for a prerogative writ the court holds that corrective relief from a utility assessment of the State Board of Equalization [Board] may be sought *solely* by appeal to the Supreme Court in conformity with the Ad Valorem Tax Code [Tax Code], 68 O.S.1981 §§ 2465 and 2468(a).[1] Inasmuch as the complainant below—Lincoln County—did not bring its appeal to this court but instead challenged the utility assessment in the district court, the court declines today to decide whether a county would have standing to contest the Board's action. Furthermore, as the County's district court appeal under the Administrative Procedures Act [APA], 75 O.S.1981 § 318,[2] is held to be the wrong

the State Board of Equalization and shall introduce evidence pertinent to such complaint, *shall have the right to appeal* from the findings of the State Board ...
   "Such transcript [of the Board's proceedings] shall be filed by such district attorney, or aggrieved person, in the Supreme Court, within ten (10) days from the adjournment of said State Board, which shall complete the appeal allowed by law...." [Emphasis supplied.]
The provisions of 68 O.S.1981 § 2468(a) are:
   "(a) The proceedings before the boards of equalization and appeals therefrom *shall be the sole method* by which assessments or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made." [Emphasis supplied.]

2. The pertinent terms of 75 O.S.1981 § 318 are:
   "(1) Any person or party *aggrieved or adversely affected* by a final order in an individual proceeding, whether such order is affirmative or negative in form, is entitled to certain, speedy, adequate and complete judicial review thereof under this act, ...
   "(2) The judicial review prescribed by this section, as to orders rendered in individual proceedings by agencies whose orders are made subject to review, *under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma,* shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but

remedy, the respondent-judge is prohibited from entertaining it.

I recede from today's pronouncement, because the court (a) refuses to reach for resolution the critical and dispositive issue in the case—whether under the provisions of § 2465 of the Tax Code a county has standing—on a footing equal to that of *every* aggrieved utility taxpayer—to contest an ad valorem tax assessment and (b) orders the County's APA-based appeal to be dismissed.

I would hold that (1) a county *must* be afforded equal access to the Board and to appellate process to complain of revenue loss occasioned by a lowered utility assessment, (2) the County's district court appeal should be transferred for decision in this court, because a timely appeal brought in the wrong forum *can* be moved to the right tribunal when, as here, statutory procedure prescribed for review is obscurely worded and the forum found to have been the wrong choice had the appearance of accessibility for the remedy that was pursued; if the APA review was indeed incorrectly invoked, this court stands today nonetheless duty-bound to save the County's appeal by removing the case to this court for decision.

### THE ANATOMY OF LITIGATION

The Board assessed for ad valorem tax Arco Pipe Line Company's [Arco] property in Lincoln County. The assessment was lower than it had been in prior years. The Board of County Commissioners and the County Assessor [collectively called Coun-

ty] lodged a protest with the Board. On its dismissal for lack of standing by the County to complain, the County commenced an appeal in the district court which was sought to be anchored on the APA provisions of § 318. The County sought (a) vacation of the Board's assessment and (b) reassessment and revaluation of Arco's properties to be based upon its actual "fair cash value."[3] The trial court overruled the challenges to the court's cognizance of the case interposed by both the Board and Arco and found that the APA's judicial review provisions in § 318[4] did confer jurisdiction upon the district court, with venue rightly laid in Lincoln County. The Board then brought this original suit to prohibit the trial judge from proceeding in the case. I would deny the writ and order the APA-based appeal transferred to this court.

### A COUNTY IS AGGRIEVED BY THE LOWERED UTILITY ASSESSMENT AND HAS STANDING TO PROTECT ITS REVENUE FROM LOSS. THE COUNTY'S APPEAL TO THE WRONG COURT SHOULD BE SAVED FROM DISMISSAL.

County government must be regarded as an aggrieved entity because, even though it is not explicitly mentioned in the Tax Code, it is affected as an ad valorem tax beneficiary.[5] A county cannot be deprived of standing either before the Board or in an appellate court. *Its interest in ad valorem tax proceeds is protected by the fundamental law of the state, Art. 10 § 9, Okla. Const.*[6] The cited section of our

subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, within thirty (30) days after the appellant is notified of the order as provided in Section 312 of this title. * * * " [Emphasis added.]

3. The terms of 68 O.S.1981 § 2443 provide:
"The property of all railroad and *public service corporations* shall be assessed annually by the State Board of Equalization at not to exceed thirty-five percent (35%) of its *fair*

*cash value* estimated at the price it would bring at a fair voluntary sale." [Emphasis added.]

4. See note 2 *supra* for the pertinent provisions of 75 O.S.1981 § 318.

5. *Independent School Dist. No. 9 v. Glass, infra* note 8 and *Independent School Dist., Etc. v. Oklahoma,* Etc., *infra* note 9.

6. The terms of Art. 10 § 9, Okla. Const., provide in pertinent part:
"* * * No ad valorem tax shall be levied for State purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in the State be used for State purposes. * * * " [Emphasis supplied.]

fundamental law prohibits the State from using ad valorem tax revenue *for any purpose*. Since every county has a constitutionally protected interest in its ad valorem tax revenue and none can be deprived of the proceeds by a legislative enactment, the Board should have treated the County as an aggrieved entity and entertained its protest.[7]

When standing is placed in issue, the question is whether the party has alleged a personal stake in the outcome of the controversy. The County's tax revenues were directly and adversely affected by the Board's lowered assessment of Arco's property. Limiting standing to contest the Board's assessment to the affected taxpayer would be unduly restrictive. Extant case law supports a much broader interpretation. In *Independent School Dist. No. 9 v. Glass*[8] we held that the school district had standing to challenge a tax refund to Ford Motor Company. In *Independent Sch. Dist., Etc. v. Oklahoma, Etc.*[9] three school districts, as indirect beneficiaries of public trust funds, were deemed to have standing to intervene as "necessary and indispensable parties."

The court's allusion in today's opinion to the County's failure to appeal to this court from the Board's denial of its protest presupposes, of course, that the County had an appellate remedy under some clearly-worded enactment—an assumption that places unwarranted reliance on the then-effective provisions of 68 O.S.1981 §§ 2465 and 2468(a).[10] While § 2465 *explicitly* conferred on an "aggrieved" utility a right to appeal, it did not expressly or by implication include adversely affected political subdivisions among entities which may seek corrective relief from the Supreme Court. Because the Tax Code did not plainly afford it an avenue for review, the County chose to pursue the *only* other remedy that appeared available by statutory law—the APA-prescribed access to the district court.[11]

This court has saved an appeal on more than one occasion when it was timely filed in the wrong court, and the mistake resulted from misleading case law or from a seemingly applicable statute that appeared to afford the aggrieved litigant an obscurely articulated avenue of procedure. See *Hale v. Bd. of Cty. Com'rs. of Seminole Cty.*,[12] *Isbell v. State, Etc.*[13] and *Poafpybitty v. Skelly Oil Company.*[14] By giving prospective application to our decisions on novel points of appellate procedure, when there was no extant case law to guard against procedural snares, obscure legislative enactments or misleading jurisprudence are kept from becoming a veritable trap for the unwary. I cannot today countenance the penalty of dismissal the Court visits on the County. Private litigants re-

---

**7.** See also *State ex rel. Department of Human Services v. Malibie,* Okl., 630 P.2d 310, 312–314 [1981; *State ex rel. Blankenship v. Atoka County,* Okl., 456 P.2d 537, 539 [1969] and *Application of Erick Hospital District,* Okl., 444 P.2d 216, 218 [1968]. In *Malibie* the court held that the Crippled Children's Act was a state program, controlled and administered by a state department and by state officers. It concluded that the Act, which required the county's ad valorem tax revenues be appropriated to support programs established thereunder, violated Art. 10 § 9, Okla. Const.

**8.** Okl., 639 P.2d 1233, 1237–1238 [1982].

**9.** Okl., 646 P.2d 1276 [1982].

**10.** See note 1 *supra* for the pertinent text of 68 O.S.1981 §§ 2465 and 2468(a).

**11.** See note 2 *supra* for the pertinent text of 75 O.S.1981 § 318.

**12.** Okl., 603 P.2d 761, 764 [1979]. In *Hale* the aggrieved party timely appealed to the Court of Criminal Appeals from an adverse judgment on jury verdict in an ouster proceeding. Because the law was unclear whether the case should have been appealed to the Supreme Court, we (a) saved the appeal since it had been timely filed in the wrong court and (b) treated it as though it had been filed in this court. The *Hale* rationale followed *Poafpybitty v. Skelly Oil Company, supra* note 9.

**13.** Okl., 603 P.2d 758, 760 [1979]. In *Isbell* the appellant brought an appeal after lapse of the 30–day period provided by the APA, because she relied on a 60–day statute that was still on the books. Following once again the rationale of *Poafpybitty* 's, *supra* note 9, we saved the plaintiff's appeal from the trap of a sudden and not so readily detectable change in the law.

**14.** Okl., 394 P.2d 515, 520 [1964].

ceived the benefit of its shield from like fate in *Poafpybitty, Hale* and *Isbell* and the County is entitled here to equal treatment.

The text of § 2465 [15] in force at the time of this proceeding's commencement was doubtless misleading. Its provisions did not include a county among the parties who could bring an appeal to the Supreme Court from the Board's lowered utility assessment. As in *Hale*, neither the statutes nor case law advised the County with clarity which tribunal was vested with appellate jurisdiction. Moreover, the language of § 318 in the Administrative Procedures Act clearly gave the County the greatest assurance of having standing to protest as an aggrieved party. If the County did indeed choose the wrong forum in the face of uncertainty created by an obscurely worded and judicially untested Tax Code enactment, its appeal is entitled to be rescued under the teachings of *Isbell* and *Hale*.

Today's pronouncement a) plainly subjects the County to less favorable treatment than that which is accorded private litigants in like situations, and b) denies the County equal access to appellate process guaranteed by the Open-Courts-of-Justice Clause in Art. 2 § 6, Okl.Const.[16]

Because I would not ascribe to the legislature an intent to exclude counties from access to this court under § 2465, I would construe the provisions of that section to afford corrective relief and standing to a county that protests a lowered utility assessment.

If the County did indeed choose the wrong forum for its appeal, I would hold today that this court, in the exercise of powers granted by Art. 7 § 6, Okl.Const.,[17] *must* transfer the district court case to its own docket where it should be treated as having been timely lodged, because its commencement below was not tardy under the misperceived APA remedy.[18]

## SUMMARY

In sum, I would assume original jurisdiction and deny the writ; I would hold that the County had standing before the Board and has standing on appeal to protect its lost revenue from a lowered utility assessment; and I would direct that the County's appeal, timely brought in the district court, be removed to this court—under the authority of Art. 7 § 6, Okl.Const., and *Hale, supra*—for disposition in accordance with the terms of § 2465.

---

15. For the text of § 2465 see *supra* note 1.

16. The terms of Art. 2 § 6, Okl.Const. are:
    "*The courts of justice of the State shall be open to every person,* and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." [Emphasis supplied.]
    See *Moses v. Hoebel*, Okl., 646 P.2d 601, 604 [1982] and *Tulsa Tribune v. The Oklahoma Horseracing Commission*, Okl., 735 P.2d 548, 555 [1986].

17. The pertinent provisions of Art. 7 § 6, Okl. Const., are:
    " * * * *[G]eneral administrative authority over all courts in this State . . . is hereby vested in the Supreme Court* and shall be exercised by the Chief Justice in accordance with its rules. . . ." [Emphasis supplied.]

18. See *Earl v. Tulsa County Dist. Court*, Okl., 606 P.2d 545, 546 [1980] and *Application of State ex rel. Dept. of Transp.*, Okl., 646 P.2d 605, 609 [1982].